FRANK L. RIDGLEY, JR., Respondent, v. JOSEPH A. ROBERTSON, Appellant.

St. Louis Court of Appeals, May 19, 1896.

**Partnership:** ASSUMPTION OF DEBTS BY ONE MEMBER: EFFECT UPON CREDITORS. A creditor will not be bound by a changed relation among his debtors, unless he has agreed thereto. Accordingly, while the relation of principal and surety is established as between two partners, where one purchases the interest of the other in the copartnership and assumes the payment of the partnership indebtedness, such new relation is not binding upon a creditor of the partnership who has knowledge of it but has not agreed to it.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*Joseph S. Laurie* for appellant.

The instructions prayed by defendant and refused by the court should have been given. By the terms of the dissolution defendant, the retiring partner, became a surety as to the firm debts, not only as to his copartner Mitchell, but also as to plaintiff and all other firm creditors having notice that defendant had transferred his interest in the firm property to Mitchell in consideration of the assumption by the latter of all firm liabilities. Brandt on Suretyship, sec. 36; *Colgrove v. Tallman*, 67 N. Y. 95; *Grove v. Garlock*, 97 N. Y. 81; *In re Dawson*, 12 N. Y. S. 781; *Filippine v. Stead*, 23 N. Y. S. 1061; *Smith v. Sheldon*, 35 Mich. 42; *Gates v. Hughes*, 44 Wis. 332; *Gourley v. Tyler*, 15 S. W. Rep. (Tex.) 731; *Hall v. Johnson*, 24 S. W. Rep. (Tex.) 861; *Leithauser v. Beaumeister*, 47 Minn. 151; *Williams v. Boyd*, 75 Ind. 286; *Powers v. Mann*, 156 Mass.

375; *Ins. Co. v. Hereford*, 143 U. S. 187; *Benson v. Hatfield*, 4 Hare, 32, 36; *Brown v. Jordan*, 16 Beav. 302; 17 Am. and Eng. Encyclopedia of Law, p. 1131; 24 Am. and Eng. Encyclopedia of Law, p. 238, n. 3; 721, n. 1; 799; *Burnside v. Fetzner*, 63 Mo. 107; *Heim v. Vogel*, 69 Mo. 529; *Fitzgerald v. Barker*, 70 Mo. 685; *Wayman v. Jones*, 58 Mo. App. 313, 319; *Bank v. Wood*, 56 Mo. App. 214; *Bank v. Klock*, 58 Mo. App. 335, 348. Defendant being thus a surety, plaintiff was bound to observe his rights as such, and defendant was consequently discharged from liability as to the notes in question by reason of plaintiff's refusal, when requested so to do, to sue Mitchell and subject the firm property to the payment of his debt, as he might have done. *Colgrove v. Tallman* and other cases cited *supra*. Defendant as surety was also discharged by reason of the assurance of plaintiff to defendant, that he had made arrangements with Mitchell satisfactory to himself as to the payment of said notes, thus lulling defendant into security and causing him to lose the opportunity to protect himself. 24 Am. and Eng. Encyclopedia of Law, p. 806, and cases cited in notes 1 and 2; *West v. Brison*, 99 Mo. 684; *Driskell v. Mateer*, 31 Mo. 325. Independently of the proposition as to suretyship, we submit that, where the continuing partner receives the firm's assets and in consideration thereof agrees with the retiring partner to assume payment of the firm debts, and a firm creditor was either a party to such agreement or subsequently assented to the same, then, in either event, such retiring partner is discharged from liability as to such firm debts. 16 Am. and Eng. Encyclopedia of Law, pp. 900–906; Story on Partnership, sec. 158; 1 Collyer on Partnership, chap. 17, sec. 407; 2 *Id.*, chap. 24, sec. 596, 553, n. 1; 1 Lindley on Partnership, p. 253; *Shepherd v. May*, 15 U. S. 505; *Filippine v. Stead*, 23 N. Y. S. 1061.

*H. D. Wood* for respondent.

The instructions offered by the defendant were properly refused. The theory of these instructions is that where, upon the dissolution of a partnership, one partner takes the firm property and assumes the firm debts, and the creditor has notice thereof, then the purchasing partner is as to such creditor the principal debtor, and the retiring partner is a surety, and that any act of such creditor, such as failure to sue the principal, or giving him time, releases the surety (retiring partner). This theory is not in conformity with the latest authorities, nor with the law of this state. The modern doctrine is that the retiring partner is not released, unless the partnership creditor is a party to the agreement of dissolution, and for a valuable consideration assents thereto, and agrees to discharge and release the retiring partner. *Powell v. Blow,* 34 Mo. 485; *Leabo v. Goode,* 67 Mo. 126; *Reyburn v. Mitchell,* 106 Mo. 365; Bates on Partnership, sec. 534; Parsons on Partnership, sec. 324; *Grant v. Holmes,* 75 Mo. 109; *Eagle Mfg. Co. v. Jennings,* 44 Mo. App. 668; *Mason v. Tiffany,* 45 Ill. 392; *Fensler v. Prather,* 43 Ind. 119; *Rawson v. Taylor,* 27 Am. Rep. 464; *Winston v. Taylor,* 75 Am. Dec. 112 (28 Mo. 82); *Ladd v. Griswold,* 46 Am. Dec. 447, note; *Roberts v. Strang,* 38 Ala. 566; *Faulkner v. Hill,* 104 Mass. 188; *Whittier v. Gould,* 8 Watts, 485; *Umbargar v. Plume,* 26 Barb. 461. The theory of the defense is based upon the principle decided in *Colgrove v. Tallman,* 67 N. Y. 95. Our supreme court has held directly the opposite to the doctrine of that case. *Leabo v. Goode,* 67 Mo. 126; *Powell v. Blow,* 34 Mo. 485; *Reyburn v. Mitchell,* 106 Mo. 365.

BIGGS, J.—The plaintiff sues on four promissory notes. In the first count it is averred that on the

twenty-seventh day of June, 1883, the defendant and one W. C. Mitchell were partners doing business under the name of Mitchell & Robertson, and that on the day mentioned Mitchell and Robertson, under their firm name, executed and delivered to plaintiff their promissory note for $248.74, due six months after date, with interest from date at the rate of ten per cent per annum. The other counts are counterparts of the foregoing, except the notes are for different amounts and matured at different dates.

Two defenses were interposed. *First.* On the thirty-first day of July, 1884, there was a dissolution of the firm of Mitchell & Robertson, the latter selling his interest in the firm to Mitchell for $9,000. It is charged in the answer that Mitchell agreed to pay the debts of the concern, and that in consideration of this, and the further agreement on the part of plaintiff and other creditors that the defendant should be released from all liability for such debts, the defendant conveyed his interest for less than it was worth; that Mitchell failed to pay the firm debts, and, having become insolvent, he transferred all of the firm property (which consisted of real estate) to one Kilgour, and that by reason of this a number of the firm creditors contemplated a suit in equity to subject the firm property in the hands of Kilgour to the payment of their debts; that in July, 1885, the defendant advised plaintiff of this fact and asked him to join in said suit, or permit the defendant to do so in his behalf, and that the plaintiff refused, whereby the defendant was discharged. *Second.* The answer further avers that, at the time the defendant asked plaintiff to join in the litigation against Kilgour, the plaintiff said "that his (plaintiff's) arrangement with Mitchell for the payment of the notes was satisfactory to himself, and he could not consent that Mitchell should be vexed or

harassed by any suit on account of said notes;" that the suit referred to was instituted and was successfully prosecuted, by means of which the other creditors of the firm collected their debts in full; that, by reason of the assurances of the plaintiff that Mitchell had secured his debts to his entire satisfaction, the defendant failed to take any steps to protect himself, and, Mitchell having died insolvent and the firm property having been exhausted or dissipated, the plaintiff ought to be estopped from alleging or claiming any liability by defendant on account of said notes.

The reply is a general denial. The case was submitted to a jury, which resulted in a verdict for the plaintiff on all of the counts, and a judgment was entered accordingly. The defendant has appealed, and complains of the admission of incompetent and irrelevant testimony, and of the action of the court as to the instructions.

The court refused to give the following instructions asked by defendant, of which he now complains, to wit:

"The court declares the law to be that, where one member of a partnership retires from the firm and the remaining member agrees with him to pay the firm debts, and such facts are known to the creditors, the member so retiring will, in law, be considered a surety.

"The court declares the law to be that, where one of two partners purchases the interest of the other in the partnership property, and assumes and agrees to pay the partnership debts, as to such debts the former becomes in equity the principal debtor and the latter his surety; and this relation a firm creditor having notice of the agreement is bound to observe. Hence, when a creditor having such notice is requested by the partner, who thus becomes a surety, to collect his claim

and he refuses or neglects so to do, if at the time of the request the member was solvent and able to pay but thereafter becomes insolvent, the surety is discharged.

"The court declares the law to be that, if it finds from the evidence that the firm of Mitchell & Robertson was dissolved in July, 1884, and that according to the terms of said dissolution Mitchell took the firm property and assumed to pay all the firm liabilities, including the notes herein; that the creditors of said firm, including Ridgley, the plaintiff herein, had notice of such dissolution and the terms thereof; that afterward said Mitchell failed to pay the firm debts and said Robertson notified and requested the plaintiff herein to proceed against Mitchell for the purpose of compelling him to apply the partnership property to the payment of firm debts, and offered at the same time to indemnify him against all costs and expenses which he might thus incur, and that Ridgley notwithstanding such notice and request refused to prosecute any action against Mitchell, and that said Mitchell has since become insolvent, then the plaintiff is not entitled to recover in this action."

The defendant failed to prove that the plaintiff agreed to release him from the notes, but his evidence did tend to show that plaintiff was advised of the terms of the dissolution of the firm. The plaintiff admitted that the defendant notified him of the suit, which was subsequently instituted by other creditors of the firm, and that he refused to join in it. It was also in evidence that the suit by the other creditors was successful, and that by means of it they had realized the full amounts of their debts, and that the property involved was sufficient to pay all of the debts of the firm, and that prior to the institution of the present suit Mitchell had died insolvent.

The defendant's instructions are based on the foregoing evidence, and they assert the principle that, where one partner sells his interest in the firm and the remaining partner or partners retain the partnership assets and agree to pay the firm obligations, the retiring partner becomes a surety for the firm debts, not only as to his former partners, but as to all creditors *having knowledge* of the arrangement, and that such creditors must, at their peril, observe his rights as such surety. This doctrine was first announced in England by Lord LYNDHURST in *Oakeley v. Pasheller*, 4 Clark and Fin. 207. That case has been followed by the courts of several of the states of this country, the most notable of which is the New York court of appeals. In the case of *Colgrove v. Tallman*, 67 N. Y. 95, it appeared that T. & B. were partners, and T. sold his interest in the firm to B., the latter agreeing to pay the firm debts. Held, that in equity T. became surety for B. in the payment of the partnership debts, and that the partnership creditors having notice of the agreement were bound to observe the new relation, and that, if B. made a valid agreement with a firm creditor for extension of time in the payment of his debt, T. was discharged. In *Hillerd v. Thorn*, 56 N. Y. 402, the rule was first adopted by the New York court. There the creditor took the note of the partners remaining in the firm and who had agreed to pay the debts, thus extending the time for the payment of plaintiff's debt, and it was held that the retiring partner was thereby discharged. However, the courts of many of the states have declined to adopt the rule to its full extent. They hold that as between the partners themselves the relation of surety and principal is established in equity, but as to creditors the new relation is not binding unless they agree to it. Mr. Bates in his work on the law of partnership comments on

the *Oakeley* case, and shows that the rule has been explained and modified by the more recent English decisions. The author has also collected the decisions, *pro* and *con*, of the various courts of this country. Section 534.

In this state the precise question has not been decided. In *Burnside v. Fetzner*, 63 Mo. 107, the supreme court held that, where one partner sold his interest in the firm to another partner and the remaining partner agreed to pay the debts, he thereby in contemplation of equity became the principal debtor, and the retiring partner assumed toward him the relation of surety. To this extent all of the courts go; but whether the creditor in such cases must take notice of the new status was not passed on. But the rulings of the supreme court in other cases seem to be against the principle of the *Oakeley* case. Thus in *Leabo v. Goode*, 67 Mo. 126, the plaintiff signed a note as surety for the firm of M. Goode & Co., composed of the defendants Goode and Cochell. After the execution of the note Cochell retired from the firm, and Goode continued the business. When the note matured, it was renewed by the individual note of Goode, with plaintiff as surety. Afterward plaintiff paid the debt, and brought his action against Goode and Cochell for money paid as their surety. Cochell claimed to be discharged by reason of the renewal. It was held that he could only be discharged in the event the renewal note was accepted in payment of the original debt. So in the case of *Powell v. Charless' Adm'rs*, 34 Mo. 485, it appeared that the firm of which Joseph Charless was a member executed a note to plaintiff for borrowed money. Before the maturity of the note Charless died, and a new firm was formed by the surviving members and the business continued. The note was renewed by the new firm. The plaintiff sued

the estate of Charless on the original debt, and the administrator pleaded the renewal in discharge of the estate. It was held that, to operate as such discharge the new note must have been accepted in payment of the old note, and that a new consideration was essential to the plaintiff's agreement to that effect.

We have been cited by counsel for appellant to *Orrick v. Durham*, 79 Mo. 174, *Fitzgerald v. Barker*, 70 Mo. 685, *Heim v. Vogel*, 69 Mo. 529, and *Commercial Bank v. Wood*, 56 Mo. App. 214, as sustaining the principle of the *Oakeley* case. In the cases mentioned the supreme court decided that, where the mortgagor conveyed the mortgaged premises and the vendee covenanted in the deed to pay the mortgage debt, as between them the vendee in equity became the principal in the mortgage debt and the mortgagor his surety, and that, if the mortgagor had to pay the debt, he was entitled to be subrogated to the rights of the mortgagee in the mortgage. This is the extent of the rulings in those cases. But in the *Wood* case, *supra*, the Kansas City court of appeals held that in such a case a valid agreement between the mortgagee and the vendee for an extension of the debt released the mortgagor. This ruling, we think, can only be supported (if at all) upon the theory, that the mortgagee recognized and adopted the new relation by dealing directly and solely with the vendee. But could such dealings with a remaining partner have such an effect as to the retiring partner? We think not. In the one case the creditor deals with one of the principals and original debtors, and in the other with a stranger to the original debt, who has become responsible for or interested in it solely through his dealings with the original debtor.

It seems to us that the better rule is that the creditor will not be bound by a changed relation among his debtors, unless he has agreed to it. As the evidence

here only tended to prove that the plaintiff had knowledge of the dissolution of the firm, and in no way obligated himself to be governed by the new relation between Mitchell and the defendant, it follows that the defendant has failed in his defense; for both of the alleged grounds of discharge rest upon the proposition that the plaintiff was compelled to observe the defendant's rights as surety.

Against the objections of the defendant the circuit court permitted the plaintiff to introduce evidence tending to prove that the money for which the plaintiff's notes were given was for the defendant's use, and not that of the firm. The objections were that the evidence was irrelevant, and not justified by the pleadings. Putting aside other questions, we can not see how the evidence was prejudicial to the defendant's case. The issues tried were, whether the plaintiff was compelled to notice and observe the equitable rights of the defendant as surety for Mitchell, and, if so, whether the defendant had been released by the refusal of the plaintiff to join in the litigation against Kilgour, or whether the defendant had been lulled into security to his loss by the representations of plaintiff that he would look to Mitchell alone for the money, whereby the defendant was discharged. The important issue was whether the plaintiff was under a legal obligation to observe the new relation between his debtors. How could the admission of the objectionable evidence have affected that issue? And as the two alleged grounds of discharge depended entirely upon the finding of the main proposition in favor of the defendant, we can not conceive what harm as to those issues could possibly have resulted to the defendant from the reception of the evidence.

The judgment of the circuit court will be affirmed. All the judges concur.